IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| WERNER ENTERPRISES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:14-cv-104 |
| | ) | |
| | ) | **COMPLAINT** |
| PICUS SA DE CV, PALOS GARZA, | ) | **AND DEMAND FOR JURY TRIAL** |
| AUTOTRANSPORTES CORPORATIVOS | ) | |
| DE NUEVO LAREDO SA DE CV, | ) | |
| INDIANA TRANSPORT, SA DE CV, | ) | |
| TRANSPORTES DE CARGA FEMA SA | ) | |
| DE CV | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Werner Enterprises, Inc., for its cause of action against the defendants, states and alleges as follows:

## PARTIES

1. Plaintiff, Werner Enterprises, Inc. ("**Werner**"), is a corporation organized and existing under the laws of the state of Nebraska with its principal place of business located in Omaha, Nebraska. Werner operates as a commercial motor carrier.

2. Defendant, Picus SA de CV ("**Picus**") is a Mexican entity authorized to exist by means of Public Deed No. 1223, granted before Lic. Manuel Lara Sanchez, Notary Public No. 149 for Nuevo Laredo, Tamaulipas, Mexico, which is registered in the Public Registry of Commerce Bureau of Nuevo Laredo, Tamaulipas, Mexico at Volume 24, Folio 124, dated February 17, 2003, with its principal place of business located at Carretera Al Aeropuerto KM 3.8, Col. Zaragoza C.P. 088060, Nuevo Laredo, Tamaulipas, Mexico. Picus may be served via any

method permitted by the Federal Rules of Civil Procedure and any treaty to which both the United States of America and Mexico are a party.

3. Defendant Palos Garza is a Mexican entity with its principal place of business located at Carretera Al Aeropuerto KM 3.8, Col. Zaragoza C.P. 088060, Nuevo Laredo, Tamaulipas, Mexico. Palos Garza is the parent company, either directly or indirectly, of defendants Picus SA de CV, Autotransportes Corporativos De Nuevo Laredo SA de CV, and Indiana Transport SA de CV. Palos Garza may be served via any method permitted by the Federal Rules of Civil Procedure and any treaty to which both the United States of America and Mexico are a party.

4. Defendant Autotransportes Corporativos De Nuevo Laredo SA de CV ("**Autotransportes Corporativos**") is a Mexican entity with its principal place of business located at Carretera Al Aeropuerto KM 3.8, Col. Zaragoza C.P. 088060, Nuevo Laredo, Tamaulipas, Mexico. Autotransportes Corporativos De Nuevo Laredo SA de CV may be served via any method permitted by the Federal Rules of Civil Procedure and any treaty to which both the United States of America and Mexico are a party.

5. Defendant Indiana Transport, SA de CV ("**Indiana Transport**") is a Mexican entity with its principal place of business located at Carretera Al Aeropuerto KM 3.8, Col. Zaragoza C.P. 088060, Nuevo Laredo, Tamaulipas, Mexico. Indiana Transport may be served via any method permitted by the Federal Rules of Civil Procedure and any treaty to which both the United States of America and Mexico are a party.

6. Defendant Transportes De Carga Fema SA De CV ("**Fema"**) is a Mexican entity with its principal place of business located at Carretera Al Aeropuerto Piedras Negras Km 0440 Nuevo Laredo, TA 88298. Fema may be served via any method permitted by the Federal Rules

of Civil Procedure and any treaty to which both the United States of America and Mexico are a party.

**JURISDICTION AND VENUE**

7. Paragraphs 1 through 6 of this Complaint are incorporated herein as if fully set forth.

8. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. This court also has jurisdiction pursuant to 18 U.S.C. § 1964.

9. This Court is permitted to exercise personal jurisdiction over the defendants because each defendant, through its agents or employees, committed acts within the State of Texas that form the basis of Werner's claims asserted in this lawsuit.

10. Venue of this action is appropriate in the United States District court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(3), in that a substantial part of the events giving rise to the claim occurred in the District and each defendant is not a resident of the United States and may be sued in any judicial district. Venue is also appropriate in United States District court for the Southern District of Texas pursuant to 18 U.S.C. § 1965(a) in that it is the district in which the defendants transacted their affairs.

**FACTS**

11. Paragraphs 1 through 10 of this Complaint are incorporated as if fully set forth herein.

12. Werner is a licensed and authorized commercial motor carrier which, among other things, transports goods in interstate commerce for customers throughout the majority of the mainland United States.

13. Defendant Picus is a motor carrier operating in Mexico and authorized and licensed to transport goods from Mexico into the United States. Picus was issued a DOT number of 1776454.

14. Defendant Indiana Transport is a motor carrier operating in Mexico and authorized and licensed to transport goods from Mexico into the United States. Indiana Transport was issued a DOT number of 1509690.

15. Defendant Autotransportes Corporativos is a motor carrier operating in Mexico and authorized and licensed to transport goods from Mexico into the United States. Autotransportes Corporativos was issued a DOT number of 1146401.

16. Defendant Fema is also a motor carrier authorized to operate within the United States and was issued a DOT number of 1175018.

17. On or about April 20, 2005, Werner and Picus executed a contract with Picus with an effective date of March 10, 2005 (the "**Interchange Agreement**").

18. The Interchange Agreement governed a relationship between Werner and Picus and services to be provided to Werner by Picus.

19. Pursuant to the Interchange Agreement Picus provided services to Werner consisting of transportation of trailers owned by Werner across the border from Mexico into the United States which would then be delivered by Werner to customers in multiple states within the United States. Picus fulfilled its obligations to transport freight cross-border through its sister companies Indiana Transport and Autotransportes Corporativos. At issue in this lawsuit are movements across the border from Nuevo Laredo to Laredo, Texas.

20.     The Interchange Agreement, which had an original term of one year, was automatically renewing annually until terminated by one of the parties and was in effect at the time of all events that are the subject of this lawsuit.

21.     Pursuant to the Section 8 of the Interchange Agreement, Picus was required to ensure that each trailer was used and operated with due care and diligence so as to prevent loss, theft and other hazards, and or damage and injury of any kind or nature whatsoever while in the care custody or control of Picus.

22.     Section 12 of the Interchange Agreement required Picus to obtain and maintain policies of insurance covering claims caused by or arising out of the use of any of Werner's trailers or the cargo transported.

23.     The policies of insurance obligated Picus to obtain pursuant to Section 12 of the Agreement included comprehensive general liability insurance covering loss of or damages to property (including broad form contractual liability coverage) with minimum limits of one million United States Dollars ($1,000,000.00 per occurrence).

24.     The policies of insurance Picus was obligated to obtain pursuant to Section 12 of the Agreement also included cargo liability insurance covering loss of or damage to the cargo transported pursuant to the Interchange Agreement with minimum limits of one hundred thousand United States Dollars ($100,000.00) per occurrence.  The Interchange Agreement prohibited this policy of insurance from containing any exclusion for employee dishonesty or theft.

25.     By Section 13 of the Interchange Agreement Picus agreed that it was responsible for the due care of, and any loss or damage to, any goods or other property placed or carried on any trailer furnished by Werner to Picus pursuant to the Interchange Agreement.  Picus further

agreed that it was responsible for the full value of the cargo, regardless of whether the full value of the cargo is declared to Picus or not.

26. By Section 14 of the Agreement, Picus agreed to indemnify Werner from and against any and all loss, damages, liability, expense, liability, or claim of any kind or nature, actual or consequential, associated with or arising from damage, injury, third-party damage or injury to person, or property, cargo damage, and any and all attorney's fees and other costs of legal prosecution, defense, or appeal (for litigation or out of court settlements), that may be sustained or incurred arising from Picus's use of Werner's trailers, or as a result of any acts, conduct, or omissions of Picus or any of its directors, officers, employees, drivers, representatives, or agents whatsoever, or the actions or conduct of the drivers, employees, agents, or representatives, or agents or representatives of any entity contracted by Picus, including negligence or other tortious conduct, or violation by Picus or any of its directors, officers, employees or agents of any applicable law, regulation, or order of the United States.

27. In carrying out its obligations under the Interchange Agreement, Picus transported (or caused to be transported) multiple trailers for Werner which were loaded with tequila (among other products).

28. Between July 9, 2013 and November 7, 2013 Picus arranged for seven such trailers loaded with tequila to be transported from Nuevo Laredo into Laredo, Texas. These movements of cargo were made by Picus and defendants Indiana Transport and Autotransportes Corporativos.

29. These seven trailers were hauled by commercial tractors operated by four drivers: Jesus Ronaldo Sanchez, Francisco Martin Ruiz Ramirez, Hector Manuel Ruelas Corral, and Jose Refugio Reyes Garcia.

30. Each of the seven trailers was delivered to Werner in Laredo, Texas with a seal intact. However, prior to delivery to Werner at Werner's terminal in Laredo, Texas, each of these trailers was diverted by the drivers of each tractor at the direction of other persons to a warehouse in Laredo, Texas where a substantial amount cargo was removed before delivery of the trailers to Werner's terminal.

31. The driver of one of the trucks hauling tequila that was ultimately stolen, Jose Refugio Reyes Garcia, was directed by Hipolito Maldonado Guillen to deliver the trailer to the warehouse where the tequila was stolen. Jose Refugio Reyes Garcia also delivered the load of tequila to be stolen at the direction of Eleazar Marroquin Arizmendi, an employee of defendant Fema acting in the course and scope of his duties to Fema.

32. As a result of the cargo taken from the trailers while they were in the possession of Picus, Indiana Transport and Autotransportes Corporativos, at the direction of employees of Picus, Palos Garza and Fema, Werner was obligated to pay for the cargo loss to its client.

33. The total loss to Werner resulting from the loss of cargo totals $587,456.37.

34. On February 13, 2014 Werner made written demand to Picus for payment of the total amount of the loss, for which Picus is responsible, giving a deadline for payment of March 3, 2014.

35. Picus failed to comply with the demand and pay for the cargo loss.

## COUNT 1: BREACH OF CONTRACT

36. Paragraphs 1 through 34 are incorporated as though fully set forth herein.

37. The Interchange Agreement obligates Picus to operate each trailer owned by Werner and transported by Defendant with due care and diligence as to prevent theft.

38. Picus failed to use due care and diligence to avoid theft of cargo as Picus's employees and/or drivers themselves committed the theft of cargo.

39. Thus, Picus breached its contractual obligations to Werner.

40. Pursuant to Section 12 of the Agreement, Picus is obligated to carry comprehensive general liability insurance covering loss of property with limits of one million United States Dollars ($1,000,000.00) per occurrence, and cargo liability insurance covering loss of cargo, with no exclusion for employee dishonesty or theft, with minimum limits of one hundred thousand United States Dollars ($100,000.00).

41. Had Picus procured and maintained such policies of insurance the loss of cargo would be insured and coverage provided.

42. Picus's insurance carrier denied coverage exists under its policy of insurance. Accordingly, Picus violated the Agreement by failing to procure the necessary insurance coverage.

43. Section 13 of the Agreement made Picus responsible for the full value of cargo for any loss of goods placed on a trailer owned by Werner.  Thus, Picus is obligated to pay Werner for the full value of any cargo loss.

44. After demand, Picus failed to fulfill its obligations under Section 13 of the Agreement.

45. Thus, Picus is in breach of Section 13 of the Agreement.

46. As a result of Picus's multiple breaches of the Agreement, Werner sustained actual damages of five hundred eighty seven thousand, three hundred fifty six and 37/100 United States Dollars $587,356.37).

47. Werner further seeks to recover all incidental and consequential damages incurred as a result of Picus's breach.

**COUNT 2: CONVERSION**

48. Paragraphs 1 through 47 are incorporated as though fully set forth herein.

49. Alternatively, and without waiving the foregoing causes of action for breach of contract, at the time that Picus, Indiana Transport and Autotransportes Corporativos delivered trailers to Werner from which cargo had been removed employees or agents of Picus, Indiana Transport and/or Autotransportes Corporatives, Werner had a right to immediate possession of the cargo.

50. The cargo consisted of tequila.

51. Acting through its employees, agents or representatives, Picus, Indiana Transport and Autotransportes Corporativos took possession of the tequila by removing it from the trailers and thereby wrongfully exercised dominion over the tequila with malice.

52. Alternatively, Picus, Indiana Transport and Autotransportes Corporativos are vicariously liable for the conversion committed by their employees, agents or representatives, who were acting within the course and scope of their employment at the time conversion was committed.

53. As a result of the conversion of the cargo by Picus, Indiana Transport and Autotransportes Corporativos and/or their employees, Werner suffered a loss of five hundred eighty seven thousand, three hundred fifty six and 37/100 United States Dollars $587,356.37).

54. Pursuant to Texas substantive law, Werner seeks exemplary damages.

**COUNT 3: CONSPIRACY TO COMMIT CONVERSION**

55. Paragraphs 1 through 54 are incorporated as though fully set forth herein.

56. Alternatively, and without waiving the foregoing causes of action, Palos Garza, Picus, Indiana Transport, Autotransportes Corporativos, Fema, and other presently unknown entities and persons (the identity of whom may be determined through discovery) engaged in a conspiracy to commit conversion against Werner on multiple occasions.

57. Palos Garza, the parent corporation to Picus, Indiana Transport, Autotransportes Corporativos and other motor carriers, freight forwarders, and logistics companies, used its employees, acting within the course and scope of their employment, to identify trailers with valuable freight, including the tequila at issue in this case, as well as other freight, and provide information to persons including Hipolito Maldonado Guillen and Eleazar Marroquin Arizmendi and Fema, so that the trailers could be diverted for purposes of committing conversion.

58. At the direction of, or by agreement with, Palos Garza, employees (including the drivers Jesus Ronaldo Sanchez, Francisco Martin Ruiz Ramirez, Hector Manuel Ruelas Corral, and Jose Refugio Reyes Garcia) of Picus, Indiana Tranport and Autotransportes Corporativos acted in conjunction with Hipolito Maldonado Guilen and Eleazar Marroquin Arizmendi to accomplish the object of the conspiracy and convert the tequila from Werner trailers.

59. As a result of the conspiracy to commit conversion, Werner suffered a loss of five hundred eighty seven thousand, three hundred fifty six and 37/100 United States Dollars $587,356.37).

60. Pursuant to Texas substantive law, Werner seeks exemplary damages.

**COUNT 4: RACKETEERING 18 U.S.C. § 1962(c)**

61. Paragraphs 1 through 60 are incorporated as though fully set forth herein.

62. Alternatively, and without waiving the foregoing causes of action, Palos Garza, Picus, Indiana Transport, Autotransportes Corporativos, and Fema are liable for violation of 18 U.S.C. § 1962(c).

63. An enterprise formed by Palos Garza, Picus, Indiana Transport, Autotransportes Corporativos, and Fema, as well as other unknown persons (whose identity may be determined

through discovery) acted to engage in a pattern of theft of tequila and other freight from trailers delivered to Werner.

64. The activities of this enterprise affected interstate commerce in that the freight which was stolen was in route from Mexico to Werner, a commercial motor carrier that hauls freight in interstate commerce.

65. The Count 4 defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally committing conversion from Werner and theft from Werner's shippers and consignors. Specifically, trailers being transported for Werner pursuant to the Interchange Agreement were diverted to a warehouse in Laredo, Texas for purposes of conversion and theft on seven occasions (for which suit is filed) and on multiple other occasions (for which Werner has not yet sustained a loss). The instances in which tequila was converted and stolen occurred during the period of July 23, 2013 through October 23, 2013.

66. Pursuant to and in furtherance of their scheme, the Count 4 defendants committed multiple acts which violate 18 U.S.C. § 659 (theft of goods from interstate or foreign shipments of freight) and which constitute racketeering activity pursuant to 18 U.S.C. § 1961(5).

67. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

68. The Count 4 defendants have directly and indirectly conducted and participated in the conduct of the enterprises's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

69. As a direct and proximate result of the Count 4 defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Werner has been injured in hits business and property in that

Werner suffered a loss through a Carmack Amendment (49 U.S.C. § 14706 et seq.) claim made by Werner's shippers against Werner, which Werner was obligated to pay.

**DEMAND FOR JURY TRIAL**

70.     Werner, pursuant to Federal Rule of Civil Procedure 38, demands a trial by jury on all issues so triable.

WHEREFORE, PREMISES CONSIDERED, Werner Enterprises, Inc. prays for a judgment of this Court in its favor for its all damages incurred, including:

(a) actual damages,

(b) consequential and incidental damages,

(c) treble damages, and/or

(d) exemplary damages,

reasonable and necessary attorneys' fees, and all pre-judgment and post-judgment interest to which it may be entitled, and such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

RINCON LAW GROUP, P.C.
1014 N. Mesa, Suite 200
El Paso, Texas  79902
Telephone:  (915) 532-6800
Facsimile:  (915) 532-6808

By:     /s/ Blair I. Fassburg
CARLOS RINCON
State Bar No. 16932700
CRincon@rinconlawgroup.com
BLAIR I. FASSBURG
State Bar No. 24044195
BFassburg@rinconlawgroup.com

Attorneys for Werner Enterprises, Inc.